PHILLIP A. TALBERT
United States Attorney
TARA AMIN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

AMANDA N. LISKAMM
Director
RACHAEL L. DOUD
Assistant Director
ANDREW K. CRAWFORD
FRANCISCO L. UNGER
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, NW
Washington, DC 20530
Telephone: (202) 451-7301
Email: andrew.k.crawford@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　Plaintiff,<br><br>v.<br><br>[SEALED],<br><br>　　　Defendant[s]. | Civil Case No. 2:23-cv-02812-TLN-DB<br><br>ORDER GRANTING *EX PARTE* MOTION FOR (1) TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE (2) ORDER WAIVING NOTICE REQUIREMENT<br><br>LODGED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED _____ |

[FILED/LODGED CONCURRENTLY UNDER SEAL: *EX PARTE* MOTION FOR (1) TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; (2) ORDER WAIVING NOTICE REQUIREMENT; MEMORANDUM IN SUPPORT; AFFIDAVIT OF UNITED STATES POSTAL INSPECTOR JASON CHUNG; *EX PARTE* RECOMMENDATION FOR TEMPORARY RECEIVER]

PHILLIP A. TALBERT
United States Attorney
TARA AMIN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

AMANDA N. LISKAMM
Director
RACHAEL L. DOUD
Assistant Director
ANDREW K. CRAWFORD
FRANCISCO L. UNGER
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, NW
Washington, DC 20530
Telephone: (202) 451-7301
Email: andrew.k.crawford@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>CB SURETY, LLC, et al.,<br><br>        Defendants. | Civil Case No. 2:23-cv-02812-TLN-DB<br><br>ORDER GRANTING *EX PARTE* MOTION FOR (1) TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE (2) ORDER WAIVING NOTICE REQUIREMENT<br><br>LODGED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED _____ |

[FILED/LODGED CONCURRENTLY UNDER SEAL: *EX PARTE* MOTION FOR (1) TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; (2) ORDER WAIVING NOTICE REQUIREMENT; MEMORANDUM IN SUPPORT; AFFIDAVIT OF UNITED STATES POSTAL INSPECTOR JASON CHUNG; *EX PARTE* RECOMMENDATION FOR TEMPORARY RECEIVER]

The United States of America has filed its Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctions, and Other Equitable Relief (the "Complaint") pursuant to 18 U.S.C. § 1345, based on Defendants' purported violations of 18 U.S.C. §§ 1343, 1344, and 1349. The United States has filed an *Ex Parte* Motion for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Memorandum in Support thereof ("TRO Application") against Defendants Thomas Eide, Travis Smith, CB Surety LLC, Peak Bakery LLC, Cascades Pointe at Clemson, LLC, KP Testing, LLC, Stephen Christopher, Motion Media Marketing Inc., SJC Financial Services Inc., Aric Gastwirth, Reseller Consultants, Inc., Ambragold, Inc., Bryan Bass, Think Processing LLC, and Bass Business Consultants.

**FINDINGS OF FACT**

The Court, having considered the Complaint, the TRO Application, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it has jurisdiction over all parties hereto and that venue in this district is proper.

2. There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate 18 U.S.C. §§ 1343, 1344, and 1349, and that the United States is, therefore, likely to prevail on the merits of this action.

3. There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of 18 U.S.C. §§ 1343, 1344, and 1349 unless they are immediately restrained and enjoined by order of this Court.

4. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective relief will occur from the transfer, destruction, or other dissipation or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court; and that, in accordance with Federal Rule of Civil Procedure 65(b) and Local Rule 231, the interests of justice require that this Order be granted without prior notice to Defendants. Thus, there is good cause for relieving the United States of the duty to provide Defendants with prior notice of its Motion for a Temporary Restraining Order.

5. Good cause exists for freezing the assets of the Corporate Entities and Defendants Eide and Smith.

6. Good cause exists for appointing a temporary receiver over the Corporate Entities, as well as any other entity that the Receiver determines is controlled or owned by the Corporate Entities, Defendant Eide, or Defendant Smith, and giving the United States and the Receiver immediate access to CB Surety's business premises.

7. Weighing the equities and considering the United States' likelihood of ultimate success on the merits, a temporary restraining order is in the public interest.

8. This Court has authority to issue this Order pursuant to 18 U.S.C. § 1345 and Federal Rule of Civil Procedure 65.

9. No security is required of any agency of the United States for issuance of a temporary restraining order. Federal Rule of Civil Procedure 65(c).

# DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

10. "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

11. "CB Surety" means CB Surety LLC, Peak Bakery LLC, Cascades Pointe at Clemson, LLC, and KP Testing, LLC.

12. "Corporate Entities" means CB Surety LLC, Peak Bakery LLC, Cascades Pointe at Clemson, LLC, KP Testing, LLC, Motion Media Marketing Inc., SJC Financial Services Inc., Reseller Consultants, Inc., Ambragold, Inc., Think Processing LLC, and Bass Business Consultants.

13. "Defendant(s)" means all the individuals and entities named as Defendants in the Complaint, individually, collectively, or in any combination.

14. "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a).

15. "Receiver" means the temporary receiver appointed in Section III of this Order and any deputy receivers that shall be named by the temporary receiver.

16. "Receivership Entities" means the Corporate Entities, as well as any other entity that the Receiver determines is controlled or owned by the Corporate Entities, Defendants Eide, or Defendant Smith.

17. "Receivership Property" means any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities.

**ORDER**

**I.   PROHIBITED ACTIVITIES**

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, contractors, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from:

1. Committing or conspiring to commit wire fraud, as defined by 18 U.S.C. §§ 1343 and 1349;

2. Committing or conspiring to commit bank fraud, as defined by 18 U.S.C. §§ 1344 and 1349;

3. Charging or debiting any person or entity on behalf of any Corporate Entities or for the purported purchase of any Corporate Entities' services;

4. Debiting funds from consumers' bank accounts or charging consumers' payment cards without their prior authorization;

5. Incorporating or creating any corporate entity for the purpose of debiting funds from consumers' bank accounts without their prior authorization;

6. Incorporating or creating any corporate entity for the purpose of facilitating payment processing or obtaining merchant accounts;

7. Creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, without first providing the United States with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; and

8. Destroying, deleting, moving, removing or transferring any and all business, financial, accounting, and other records concerning Defendants' operations and the operations of any other corporate entity owned or controlled, in whole or in part, by Defendants; and failing to

create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

## II. ASSET FREEZE

IT IS FURTHER ORDERED that, except as otherwise specified herein, the Assets of the Corporate Entities, Receivership Entities, and Defendants Eide and Smith are frozen until further notice of this Court. Accordingly, all persons and entities with direct or indirect control over any of Corporate Entities', Receivership Entities', Defendant Eide's, or Defendant Smith's Assets, including any financial or brokerage institution, bank, payment processor, business entity, or person, who receives actual notice of this Order (by service or otherwise) shall:

    1.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; and

    2.    Deny any person access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Corporate Entity, Receivership Entity, Defendant Eide, or Defendant Smith or otherwise subject to access by any Corporate Entity, Receivership Entity, Defendant Eide, or Defendant Smith.

IT IS FURTHER ORDERED that the Corporate Entities, Receivership Entities, Defendant Eide, and Defendant Smith, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order (by service or otherwise), are hereby temporarily restrained and enjoined from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any of a Corporate Entity's, a Receivership Entity's, Defendant Eide's, or Defendant Smith's Assets.

IT IS FURTHER ORDERED that each Corporate Entity, Defendant Eide, and Defendant Smith shall provide to the United States, within seven (7) days of receiving a copy of this Order,

a list of all financial or brokerage institutions, banks, or other entities at which they maintain savings, checking, investment, merchant, or other accounts.

This Section does not prohibit any transfers to the Receiver required by this Order.

### III.   RECEIVERSHIP

**A.   APPOINTMENT OF A RECEIVER**

IT IS FURTHER ORDERED that Kenneth R. Jones is appointed as temporary receiver of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

**B.   RECEIVERSHIP POWERS AND DUTIES**

IT IS FURTHER ORDERED that the Receiver is directed and authorized to accomplish the following:

1. Take exclusive custody, control, and possession of all Receivership Property, and Documents and Assets in the possession, custody, or control of any Receivership Entity, wherever situated, except those assets seized by the United States pursuant to a valid order of a court. The Receiver shall have full power to divert mail, and to sue for, collect, receive, take in possession, hold, and manage all Receivership Property; provided, however, the Receiver shall not attempt to collect any amount from a person if the Receiver believes the person was a victim of the wire or bank fraud scheme alleged in the Complaint in this matter;

2. The Receiver shall also assume control over all of the Receivership Entities' ongoing business operations, including those in which the Receivership Entities have a controlling interest. With regard to these business operations, the Receiver shall:

    a. Assume full and exclusive control of the operations of the Receivership Entities, removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Entities from control of, management of, or participating in, the business affairs of each of the Receivership Entities;

        b.      Take all steps necessary or desirable to secure the business premises of the Receivership Entities. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable: (i) completing a written inventory of all assets; (ii) obtaining pertinent information from all employees and other agents and all accrued and unpaid commissions and compensation of each such employee or agent; (iii) videotaping all portions of the above-referenced business locations; (iv) securing the above-referenced business locations by changing the locks and disconnecting any Internet service or other means of access to the computer or other records maintained at the locations;

        c.      Manage, administer, and conduct the operations of the ongoing legitimate business operations of the Receivership Entities, until further Order of this Court, by performing all incidental acts that the Receiver deems to be advisable or necessary; and

        d.      Choose, engage, and employ attorneys, accountants, appraisers, property managers, and other independent contractors and technical specialists or other professionals ("Professionals"), with regard to the operations of the Receivership Entities and/or support and advice to the Receiver as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

3. Defend, compromise, or settle legal actions wherein the Receiver or any of the Receivership Entities is a party commenced prior to or subsequent to this Order with the authorization of this Court. The Receiver may waive attorney-client privilege held by any of the Receivership Entities;

4. Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate;

5.  Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging its duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments. The Receiver shall not be required to perform under any contract or lease entered into by the Receivership Entities prior to the date on which he assumes possession of the Receivership Assets;

6.  Maintain accurate records of all receipts and expenditures incurred as Receiver;

7.  Coordinate with the United States and Court personnel as needed to ensure that any Assets subject to the terms of this Order are available for criminal restitution, forfeiture, or other legal remedies in proceedings commenced by or on behalf of the United States;

8.  Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency; and

9.  File a status report every 60 days with the Court.

The Receiver shall have the power and authority to perform any other act necessary or desirable to accomplish any of the foregoing.

**C.    COOPERATION WITH THE RECEIVER**

IT IS FURTHER ORDERED that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them; and any other person with possession, custody, or control of Receivership Property or records relating to Receivership Property, or other records relating to the Receivership Entities; who receive actual notice of this Order, shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any

keys, codes, user names, passwords, and all other means required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Receivership Property and sales of the Receivership Entities.

### D.   TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

IT IS FURTHER ORDERED that Defendants and any other person with possession, custody or control of Receivership Property shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Receivership Property. This shall include, but not be limited to, immediately providing, transferring, or delivering to the Receiver possession, custody, and control of:

1. All Assets held by or for the benefit of the Receivership Entities;

2. All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

3. All Documents of or pertaining to the Receivership Entities;

4. All computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership Entities;

5. All keys, codes, user names, passwords, and all other means of authentication necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, mobile phones, accounts, computer systems (onsite and remote), electronic data hosts, or other property.

Provided that nothing in this Section shall be construed to require the United States or a law enforcement agency to transfer Assets, Receivership Property, or Documents to the Receiver that it has seized pursuant to a valid order of a court.

In the event that any person or entity fails to deliver or transfer any Asset, Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

### E.   PROVISION OF INFORMATION TO RECEIVER

IT IS FURTHER ORDERED that the Defendants shall immediately provide to the Receiver:

1. A list of all Assets and accounts of the Receivership Entities, including but not limited to those that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

2. A list of all agents, employees, officers, attorneys, contractors, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

3. A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

### F.   DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that any financial or brokerage institution, bank, payment processor, business entity, or person who receives actual notice of this Order (by service or otherwise), who has held the Receivership Entities' Assets, through an account or otherwise, shall:

1. Provide the Receiver, within ten business days of notice of this Order, a statement setting forth: (1) the identification of each such account or Asset; (2) the balance of each such account, or a description of the nature and value of each such Asset; and (3) the identification of

any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Receivership Entity, or is otherwise subject to access by any Receivership Entity;

2. Upon the Receiver's request, promptly provide the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities; and

3. Cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to all accounts owned by each of the Defendants.

**G.    COMPENSATION OF RECEIVER**

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Entities. Receiver shall be paid based on an hourly rate, which may be increased annually on notice to the Court at the time that Alvarez and Marsal ("A&M" or the "Receive Firm") generally increases its rates. Hourly rates for A&M personnel engaged or utilized by the Receiver shall be based on their standard hourly rates. In addition, Receiver shall be reimbursed for all out-of-pocket expenses reasonably incurred in the discharge of its rights and obligations hereunder.

Such fees and expenses shall be payable monthly without the requirement of a further order of this Court, provided, however, that the Receiver shall file with the Court and serve on

the parties periodic accountings describing the Receiver's and A&M's compensation, with the first disclosure filed no more than sixty (60) days after the date of this Order.

All fees and expenses of the Receiver (including without limitation the indemnification provisions set forth above) shall constitute a first lien and charge against the Receivership Assets, with priority ahead of all other liens and security interests, including without limitation the liens and security interests of all other persons and entities.

### IV. ADDITIONAL TERMS AND PROTECTIONS AFFORDED TO THE RECEIVER

The Professionals retained by the Receiver may include, without limitation, the Receiver's employer and/or its affiliates (the "Receiver Firm"). The Receiver is hereby expressly authorized and directed to utilize and retain the services the Receiver Firm, its affiliates and personnel as Professionals (rather than utilizing other similarly situated or available personnel or professional services firms) notwithstanding that (a) the Receiver may benefit (directly or indirectly) from the compensation paid to the Receiver Firm and (b) other persons or entities may be available to provide the same or similar services at similar or more competitive prices. In no event shall the Receiver, Receiver Firm, or their affiliates be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

Receiver shall be authorized on the Receivership Entities' behalf to cause the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Assets. Receiver may, in its discretion, obtain insurance covering the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets. Receiver may, in its discretion, obtain receivership, fiduciary and/or errors & omissions liability insurance covering the acts and omissions and related claims against the Receiver arising from the Receivership and the cost shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets.

The Receiver may, in its sole and absolute discretion, resign its position as Receiver by providing not less than thirty (30) days written notice to this Court. The Receiver shall not be required to obtain the approval of this Court prior to resigning as receiver hereunder.

The Receiver is authorized to serve with no bond.

The liability of the Receiver and the Receiver's advisors, agents, representatives, employees, affiliates, successors and assigns (including but not limited to the Receiver Firm) ("Exculpation Parties"), for any and all claims, liabilities, damages, fees, costs, expense and charges incurred or arising from their respective acts or omissions in connection with the Receivership Entities, this Order, the receivership established pursuant to this Order, and/or the Receivership Assets ("Related Matters"), shall exist only to the extent that this Court determines by a final and non-appealable judgment that such acts or omissions resulted solely from such person's bad faith or gross negligence. Any such liability shall be paid as an expense of the receivership when and as incurred. The Receiver shall be fully protected by the Receivership Estate from, any action taken or suffered or omitted by the Receiver in reliance upon the advice of Professionals, attorneys, advisors or others, except for in the case of willful misconduct, gross negligence or fraud of the Receiver as determined by a final order of this Court. Notwithstanding the foregoing, the Receiver shall be under no obligation to consult with others, and the Receiver's good faith determination not to do so shall not result in the imposition of liability on the Receiver, unless such determination arises from the Receiver's willful misconduct, gross negligence, or fraud. Persons or entities dealing with the Receiver shall look only to the Receiver Assets to satisfy any liability incurred by the Receiver, and the Receiver (and any affiliated entities or persons, including, without limitation, the Receiver Firm) shall have no personal or individual obligation to satisfy any such liability. The Receiver shall be entitled to obtain such insurance coverage as it may deem reasonable to protect itself and the Exculpation Parties against claims and liability which are covered, or not covered, by the foregoing exculpation, and any premiums or fees for such insurance shall be paid from the Receivership Assets. This

paragraph shall survive the termination or resignation of Receiver, and the termination or suspension of the receivership created hereunder.

In the event that, at any time whether before or after termination or resignation of the Receiver of this receivership, as a result of or in connection with the Related Matters, any Exculpation Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or the Receiver or any other Exculpation Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Exculpation Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Exculpation Party will be reimbursed from the Receivership Assets for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will be compensated from the Receivership Assets for the time expended by its personnel based on such personnel's then current hourly rate.

No provision of this Order shall require the Receiver to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties as Receiver hereunder, or in the exercise of any of its rights or powers, if the Receiver shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to him against such risk or liability is not reasonably assured to it.

This Court shall retain jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby, and the Receivership Assets. No person or entity may file suit against the Receiver, in its capacity as Receiver, unless otherwise authorized in advance by this Court. Any and all actions against the Receiver which affect the Receiver or the Receivership Assets shall be brought in this Court, and any attempt to collect from any Receivership Assets must be brought in this Court. Any judgment entered against the Receiver shall not be valid unless approved by this Court. The Receiver may apply at any time to the Court, with notice to all other parties appearing in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties.

## V.     DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each affiliate, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date the Defendant receives notice of this Order, provide the United States with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them, to disregard this Order or believe that they are not bound by its provisions.

## VI.     SERVICE OF THIS ORDER

IT IS FURTHER ORDERED that the United States is directed to provide notice to Defendants and serve the Defendants with summonses, copies of the complaint, and copies of this Order as soon as practicably possible.

With regard to Defendant Bass, the United States may provide notice via email pursuant to the procedure described in the Brief, while simultaneously pursuing formal service pursuant to Rule 4(f). If other Defendants take efforts to evade service, the United States may provide notice to those Defendants via email as well.

## VII.     PRELIMINARY INJUNCTION HEARING

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 231(c)(7), Defendants shall appear before this Court on **December 14, 2023, at 1:30 p.m.** for a hearing to show cause, if there is any, why the preliminary injunction requested by the United States should not be granted.

## VIII. BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

IT IS FURTHER ORDERED that the Defendants shall file with the Court and serve on the United States any responsive pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than December 11, 2023, at 12:00 p.m. The United States may file a reply or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on Defendants or Defendants' counsel no later than on December 13, 2023, at 12:00 p.m.

## IX. DURATION OF THE ORDER

IT IS FURTHER ORDERED that this Order shall expire 14 days from the date of entry noted below, unless within such time, the Order is extended for an additional period pursuant to Federal Rule of Civil Procedure 65(b)(2).

## X. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

IT IS SO ORDERED.

DATED this 6th day of December 2023 at 1:25 p.m. PST.

Troy L. Nunley
United States District Judge