# Exhibit 1

Honorable Troy L. Nunley
United States District Judge
United States District Court for the Eastern District of California


Preliminary Injunction – January 2, 2025

Interim Report of Temporary Federal Receiver

Kenneth R. Jones


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


United States of America,

Plaintiff,

v.                                              Civil Case No. 2:23-cv-02812-TLN-DB

CB SURETY, LLC, et al.,

Defendants.


Interim Report of Temporary Federal Receiver


On December 7, 2023, a temporary restraining order ("TRO" or "order") was unsealed and appointed me as temporary receiver over the "CB Surety LLC, Peak Bakery LLC, Cascades Pointe at Clemson, LLC, KP Testing, LLC, Motion Media Marketing Inc., SJC Financial Services Inc., Reseller Consultants, Inc., Ambragold, Inc., Think Processing LLC, and Bass Business Consultants." *See* ECF No. 7.

The Court's order was based, in part, on the affidavit of US Postal Inspector Jason Chung. *See* ECF No. 2-3.

The Receiver's First Interim Status Report was submitted to the court on December 29, 2023. On January 5, 2024, the Court issued a preliminary injunction in this matter, continuing the interim receivership and directing that the Receiver file a subsequent every 60 days. *See* ECF No. 35.  On August 8, 2024, the Court added Won It All, Inc. and Run It Up, Inc. as Receivership Entities. ECF No. 82.

The contents of this Interim Status Report will focus largely on the actions taken since the last interim report and only reference items previously reported as they pertain to recent actions.

**Table of Contents**

| | | |
|---|---|---:|
| I. | Communications with LLC Owners | 3 |
| II. | Contact with individual LLC owners and their counsel | 3 |
| III. | Litigation against LLC owners | 4 |
| IV. | Likely reasons for the lack of LLC owner responses | 4 |
| V. | Continued contact with counsel representing both the Receivership Entities and owners of the Receivership Entities | 5 |
| VI. | Corporate Records / Forensic Technology Update | 5 |
| VII. | Receivership expenses summary through November 30, 2024 | 5 |

I.   **Communications with LLC Owners**

In an effort to inform and communicate with the LLC owners, the Receiver developed a two-prong approach for gathering up to date information.  Initially, as discussed in the Receiver Report submitted in March 2024, the Receiver completed the creation of a website, https://www.cbsuretyllcetalreceivership.com/, to allow for a secure way to collect information from LLC owners. To date, over 200 LLC owners have completed the information form on the website. Additionally, the Receiver has received some completed forms through emails as some LLC Owners had issues determining if the information was actually submitted.

Initial Communication:

After the completion of the website, the Receiver compiled a list of LLC owners emails through available documents. This list includes over 2,500 individual emails, representing over 4,000 LLCs.  In February 2024, the Receiver sent an initial communication discussing how the Receiver has been appointed by the Court, how the individuals had been identified as having contact with the Receivership Entities, and to please provide any information (corporate records) through the website form. Additionally, the receiver requested that LLC owners, who received this communication, forward it along to other LLC owners whom they know may have also been involved and that did not receive the email.

Subsequent to this communication, the Receiver has had additional follow-up communications with various LLC owners who requested additional information, or who wanted to discuss their specific situations.  These communications continue to this day. Additionally, LLC owners who have contacted DOJ were referred to the Receiver.

Follow Up Communication:

In December 2024, the Receiver sent out two additional coordinated emails to the entirety of the known LLC owners.  The first of these communications was a simple follow up to the email sent in February pointing the LLC Owners to the website to fill out the information form, if they had not done so previously.

The second communication notified the LLC owners that some LLC owners had experienced collection demands and were the target of litigation. The Receiver included a read receipt on the email to determine which LLC owners read the communications. At this time the statistics are not available on the read receipts and will be updated at the filing of the next report.

II.  **Contact with individual LLC owners and their counsel**

My staff and I have had several emails and telephone conversations with individual LLC owners, and we have received some corporate records in the form of emails and contracts with personnel at the Receivership Entities. These records range from social media influencers who touted the benefits of becoming a reseller LLC, to instructions on how to open bank accounts, to aligning them with 'advertisers' and how to address the many fraud and chargeback claims.

I have personally spoken to several LLC owners, and I make it a point to speak to each attorney known to represent an LLC owner.

### III.   Litigation against LLC owners

<u>State Attorneys General Offices:</u>

In addition to the ongoing federal investigation, I am aware of at least one state attorney general investigation. Counsel for one LLC owner has been contracted by the Corporate Oversight Division of the Michigan Department of Attorney General. Likely this and perhaps other state investigations are the result of consumer complaints.

<u>Collection Actions:</u>

Several LLC owners and their attorneys have provided information about claims filed against them. One LLC owner provided the following (note that the name of the Receivership Entity and the advertiser have been removed for the purpose of this report).

> "Resellers Consultants registered two LLC's for me in the State of New York. Recently I found out that resellers broke the contract and I have collection account in the sum of $8,108.00 Collection agency did not provide detailed information, but said it is for merchant accounts in 2023. Later my personal and LLC's information was transferred to new *(advertiser).* They had full access to the LLC's and Chase businesses accounts. I started to receive charge back letters while the businesses websites were active 1/8/2023 through 6/8/2024. I notified *(Receivership Entity)* an[d] they said to ignore and shred all letters as their accounting department has copies. The person I was in contact is Anna. She never gave her full information. Her telephone number is (321) 390-0262. I'm very concerned about my status with the Resellers consultants and than *(the advertiser)* because I ended up [being] responsible for the collections and I don't know what to expect in 2024."

<u>LLC owner agrees to make monthly collection payments:</u>

One LLC owner relayed that, "The unpaid merchant fees owed to Paysafe Group for have been sent to The law firm of Caine and Webber for collection. I had to agree to monthly payment arrangements to avoid legal proceedings."

<u>Attorney Expenses:</u>

Several LLC owners and their counsel have relayed information about the attorney expenses that the LLC owners have incurred. Attorneys for the LLC owners have helped their clients with the aforementioned collection actions, responses to attorneys general, etc. These costs appear to be higher than the total monthly funds received by the LLC owners.

<u>Summary of known LLC owner litigation and resulting personal expenses:</u>

In succinct layperson terms, the LLC owners have been left holding the bag. For a meager $750 a month (and less in many cases), their collective accounts have been used to funnel millions of dollars' worth of transactions and they now face state investigations, collections and legal costs.

### IV.   Likely reasons for the lack of LLC owner responses

Based on the above correspondences, I believe there are at least three reasons that we have a lack of response from a larger number of LLC owners. First, several LLC owners and their counsel have read the documents filed with the court and they are concerned about prosecution. Second, some LLC owners have relayed that they communicated with other LLC owners, and many are afraid of litigation and want

to remain silent. Finally, in spite of our best effort to explain the role of the Receiver in our emails to all LLC owners, I believe many are confused about the role and also concerned about the access DOJ might have to any information they share with the Receiver.

## V.  Continued contact with counsel representing both the Receivership Entities and owners of the Receivership Entities

Dialogue and activities continue about the corporate status of the Receivership Entities, the filing of annual reports for those entities, and tax filing responsibilities for those entities.

## VI.  Corporate Records / Forensic Technology Update

To date, the Receivership has captured and analyzed a significant number of corporate records and data from and relating to the Receivership entities.  One of the primary areas of focus over the past two months was data on servers. Recently, the Receiver received access to additional data hosted by third party service providers. In addition, the DOJ continues to provide data to the Receiver that was seized from the Defendants, Receivership Entities and/or third parties (including banks), which, together with the Receiver's data collection, will help the Receiver form a complete understanding of the facts.  The Receiver is still in the process of reviewing and analyzing those additional materials.

## VII.  Receivership expenses summary through November 30, 2024

The total amount of funds spent since the last Receivership report, through November 30, 2024, is $353,219.54.

*Fact Gathering*

Since the last Receiver report, the Receiver has reached out to LLC owners as discussed in the above report.  This outreach has led to the Receiver identifying additional funds of the Receivership and has informed the Receiver about various litigation occurring for a handful of LLC owners.

*Asset Tracing*

The Receiver has undergone an effort to identify additional funds that may be property of the Receivership not previously identified.  This has included reviewing financial documents, court filings, background information of defendants, and other legal entities that may have been involved in the alleged scheme.  This process is ongoing and will continue as the Receiver continues to receive new and updated information.

*Evidence tracking and Preserving data*

Forensic technology resources available to the Receiver have continued to access and store corporate records, largely from those Receivership Entities not located at the Rancho Dr. location.

A number of funds spent throughout the months have been in relation to gathering, communicating, and providing various documents to various government agencies as per the stipulation of the order.  Additionally, funds have been spent to make sure that any documents received are able to be reviewed and that the data is not corrupt.  The Receiver has made an effort to make sure only the appropriate documents responsive to the requests are provided and in a timely manner.

*Project Management*

The final category of funds spent through November 30, 2024, is related to general project management.  This includes internal meetings to coordinate priorities, discussions with counsel, and drafting of requests. Additionally, the Receiver has had a number of calls with various LLC Owners attorneys discussing litigation that has arisen for these individuals due to the actions of this scheme.  A detailed invoice for time spent by the Receiver along with those I have deemed necessary is available at the request of the Court.

Summary of Expenses for Receivership Counsel

Since the last report, the Receiver incurred $38,363.00 in expenses for professional services from counsel at DLA Piper LLP (US).  The expenses for professional services from counsel at DLA Piper LLP (US) for the month of September were $15,425.50, October were $15,072,50, and for November 2024 they were $7,865.00.

These fees included analysis of the Court's order expanding the Receivership to cover additional entities, conferring with counsel for Defendants, conferring with DOJ, and advising on requests for information to support the Receiver's duties under the Preliminary Injunction.  A detailed invoice for time spent by Counsel is available at the request of the Court.


Respectfully submitted,

Kenneth R. Jones
Temporary Federal Receiver