# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CB SURETY, LLC, et al.,<br><br>　　　　　　Defendants. | CIVIL CASE No. 2:23-cv-02812-TLN-SCR |

**RECEIVER'S JUNE 26, 2026, INTERIM REPORT**

Mark A. Roberts (the "Receiver"), as receiver of CB Surety LLC, Peak Bakery LLC, Cascades Pointe at Clemson, LLC, KP Testing, LLC, Motion Media Marketing Inc., SJC Financial Services Inc., Reseller Consultants, Inc., Ambragold, Inc., Think Processing LLC, Bass Business Consultants, and Won it All, Inc. (collectively the "Defendants") and Defendants' respective assets, by and through counsel, hereby submits this interim report (the "June 2026 Interim Report") pursuant to the January 5, 2024 preliminary injunction (the "Preliminary Injunction") continuing the interim receivership directing a receiver to file a report every 60 days [ECF No. 35] summarizing the Receiver's material activities.  This report covers the period from April 29, 2026 through June 26, 2026.

**I.  BACKGROUND**

1.　　On December 7, 2023, a temporary restraining order ("TRO" or "Order") was unsealed and appointed Kenneth R. Jones as receiver over CB Surety LLC, Peak Bakery LLC,

Cascades Pointe at Clemson, LLC, KP Testing, LLC, Motion Media Marketing Inc., SJC Financial Services Inc., Reseller Consultants, Inc., Ambragold, Inc., Think Processing LLC, and Bass Business Consultants [ECF No. 7].  The Court's order was based, in part, on the affidavit of US Postal Inspector Jason Chung [ECF No. 2-3] (the "Chung Affidavit").

2.     The Receiver's First Interim Status Report was submitted to the court on December 29, 2023 [ECF No. 28].  On January 5, 2024, the Court issued the Preliminary Injunction in this matter, continuing the interim receivership and directing that the Receiver file a subsequent report every 60 days [ECF No. 35].

3.     On August 8, 2024, the Court added Won It All, Inc. and Run It Up, Inc. as Receivership Entities [ECF No. 82].  On May 30, 2025, the Court removed Run It Up, Inc. as a Receivership Entity [ECF No. 110].

4.     Pursuant to the Preliminary Injunction [ECF No. 35] Kenneth R. Jones subsequently submitted interim reports on March 4, 2024 [ECF No. 67], May 3, 2024 [ECF No. 72], July 2, 2024 [ECF No. 79], September 3, 2024 [ECF No. 86], November 4, 2024 [ECF No. 91], January 3, 2025 [ECF No. ?96], March 4, 2025 [ECF No. 99], May 5, 2025 [ECF No. 108], July 1, 2025 [ECF No. 113], and August 28, 2025 [ECF No. 119].

5.     On September 12, 2025, the court granted the motion to substitute the receiver, relieving Kenneth R. Jones of his duties as the receiver and appointing Mark Roberts as the Receiver henceforth [ECF No. 120].

6.     Additionally, Permanent Injunctions regarding defendants Cascades Point at Clemson, LLC, Reseller Consultants, Inc., Ambragold, Inc., Won it All, Inc., and Run it Up, Inc., have been entered into the case [ECF Nos. 107 and 110].

7.     On October 24, 2025, the court entered default judgement against Travis Smith,

Stephen Christopher, CB Surety LLC, Peak Bakery LLC, KP Testing, LLC, Motion Media Marketing Inc., SJC Financial Services Inc., Think Processing LLC, Bryan Bass and Bass Business Consultants [ECF No. 130 and 131].

8. Pursuant to the Preliminary Injunction [ECF No. 35] the Receiver subsequently submitted interim reports on October 28, 2025 [ECF No. 132], December 29, 2025 [ECF No. 134], February 27, 2026 [ECF No. 136], and April 29, 2026 [ECF No. 137].

## II.  GENERAL OVERVIEW

9. At the outset of the receivership, the Receiver's activity focused on promptly identifying, collecting, and stabilizing the Assets, as well as evaluating the prospect of identifying and identifying additional assets associated with the Defendants in accordance with the Order and Preliminary Injunction.  The Receiver also undertook an analysis of Defendants' business.  As the receivership process has continued, the Receiver continues to pursue assets while limiting ongoing expenses.

10. The Receiver has continued to work with the Department of Justice, other government agencies, and the Parties to fulfill his duties and obligations as set forth in the Court's Preliminary Injunction [ECF No. 35] as well as the Permanent Injunctions that have since been entered in this case [ECF Nos. 107 and 110].  During this reporting period, the Receiver's focus has continued to be responding to requests for information from the government and the Parties and identifying additional Receivership Assets related to the alleged scheme.

11. To accomplish this, the Receiver continues to investigate the relevant entities to understand the activities of Defendants and any other potential claims against other third parties.

### III.  RECENT ACTIVITES OF RECEIVER

#### A.     Asset Tracing and Recovery of Assets

12.     The Receiver continues to undergo an effort to identify additional funds that may be property of the Receivership not previously identified.  This included reviewing financial documents, court filings, background information of defendants, and other legal entities that may have been involved in the alleged scheme.  The Receiver has received and reviewed additional financial documents that contain historical cash flow of certain receivership entities.  The Receiver continues to assess company records and cash flow statements in order to find additional assets for the victims.

13.     The Receiver continues to make inquiries and requests of financial institutions believed to have assets belonging to the Receivership through the subpoena process.  The Receiver believes additional assets will be located and efforts continue to locate and acquire these potential assets of the estate.

14.     Since the last report, the Receiver has also worked with Google LLC to secure access to the contents of certain Google Accounts maintained by the Receivership Entities.  On June 22, 2026, the Court approved a stipulated order granting the Receiver's request for access to the contents of these accounts [ECF No. 139].  The Receiver anticipates these accounts may lead to identification of additional Receivership Assets.

#### B.     Subpoena of Financial Institutions

15.     Through the Receiver's investigation of activities of the Defendants, the Receiver has been able to compile lists of entities, approximately 5,000, set up under the guidance of Defendants for use by Defendants or related parties.  Based on a review of activities by Defendant entities, the Receiver believes these entities may have estate funds in accounts opened across a various number of financial institutions.

16.    To identify additional Receivership Assets, the Receiver served subpoenas on eight financial institutions on October 9, 2025.  Notices of those subpoenas are available on the docket [ECF Nos. 122-129].  At the time of this report three financial institution has been fully compliant with the subpoena and five remain in discussions regarding compliance.  Since the previous report no additional funds have been seized.  Subpoena counsel for the Receiver continues to correspond with the remaining financial institutions in pursuit of receivership assets or relevant information.  Should these financial institutions not respond in accordance with these subpoenas, the Receiver would then move to file a motion to compel.

17.    If the Receiver identifies additional Receivership Assets, the Receiver intends to preserve those assets in accordance with the Court's Preliminary and Permanent Injunction orders.

18.    As the investigation into the Receivership entities continues, the receiver may identify additional financial institutions with funds.  Should this occur, the receiver would subpoena these financial institutions in pursuit of funds.

**C.    Pursuit of Client Files from prior Receivership Entities' Counsel**

19.    Additionally, on March 27, 2026, the Receiver requested the client files for certain Receivership Entities previously represented by Manny Medrano, Esq.  The Court's preliminary injunction provides that:

"Defendants and any other person with possession, custody or control of Receivership Property shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Receivership Property.  This shall include, but not be limited to, to the extent they have not already done so, immediately providing, transferring, or delivering to the Receiver possession, custody, and

control of . . . All Documents of or pertaining to the Receivership Entities."

Pursuant to the Court's Order and California Rule of Professional Conduct 1.16(e)(1), the Receiver is entitled to possession of these client files.  While counsel for the Receiver and counsel for Mr. Medrano continue to try to resolve this request without the need for court intervention, the Receiver anticipates that he may need to file an Affidavit of Non-Compliance with the Court to obtain the requested client files.

### D.    US Department of Justice, Other Law Enforcement and Other Inquiries

20.    The Receiver continues to receive requests for information from a variety of government agencies.  These requests are largely responsible for the Receiver's ongoing forensic technology efforts.

### E.    Technology and Data Assets of Defendants

21.    The Receiver is continuing to review materials collected by the Receiver and received from the government in support of the Receiver's obligations to "[c]ooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency" and "conduct discovery in this action on behalf of the receivership estate" [ECF No. 35, at 9].  As discussed above, the Receiver expects additional technology and data asset related review of the contents of certain Google Accounts maintained by the Receivership Entities. The pursuant to the order of the court the Receiver expects to receive and begin review of these files imminently.  Processing of new data obtained, ongoing collection of additional data, and responses to the aforementioned requests from the government, consistent with the Court's order, are the primary drivers of the Receiver's ongoing technology-related efforts.

### F.      Professional Fees and Receivership Costs

22.      The fees and expenses incurred by the Receiver and his professionals are necessary to conduct the Receiver's investigation and to maintain and pursue Assets.  The Receiver's professional fees are directly related to efforts related to Asset Recovery and general project management.  This includes previously discussed efforts and internal meetings to coordinate priorities, discussions with counsel, and drafting and responding to requests.  A detailed invoice for time spent by the Receiver along with those he has deemed necessary is available at the request of the Court.

23.      The expenses for professional services from counsel at ZwillGen PLLC included conferring with the DOJ and advising the Receiver regarding requests for information to support the Receiver's duties under the Preliminary and Permanent Injunctions, as well as responding to additional requests for information from the Parties.  A detailed invoice for time spent by counsel is available at the request of the Court.

24.      The Receiver retained counsel with Klehr Harrison Harvey Branzburg LLP in order to minimize costs and conflict issues when serving subpoenas against the various financial institutions.  A detailed invoice for time spent by counsel is available at the request of the court.

25.      The Receiver has additionally retained special counsel with McGuireWoods LLP to assist with assessment of potential claims against third parties for the benefit of the victims in this case.  A detailed invoice for time spent by counsel is available at the request of the court.

26.      Under the Preliminary Injunction, the fees and expenses of the Receiver and his professionals are to be paid out of the assets held by or in the possession or control of the Receiver from the Defendants [ECF No. 35 at 13].

27.     Professional fees and expenses incurred since the last report on April 29, 2026, are

as follows:

28.     $48,275.60 for Alvarez & Marsal North America LLC.

29.     $12,436 for McGuire Woods LLP (January 2026-date of this report)

30.     $2,566.50 for ZwillGen PLLC.

Dated: June 26, 2026                Respectfully submitted,

                                    /s/ Mark A. Roberts
                                    Mark A. Roberts
                                    Alvarez & Marsal North America LLC
                                    655 15th Street, NW Suite 650
                                    Washington, DC 20005
                                    *Receiver*